[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] MEMORANDUM OF DECISION
The parties intermarried on October 5, 1996 in Milford, Connecticut. They have resided continuously in this state since that time. There is one minor child issue of the marriage: Destiny Margaret Funteral-Fine, born February 26, 1998.
The evidence presented at trial has clearly established the allegation that the marriage has irretrievably broken down. Judgment may enter dissolving the marriage on that ground.
The court has carefully considered the criteria set forth in §§ 46b-56, 46b-81, 46b-82,46b-84 and 46b-62 of the Conn. CT Page 3764 General Statutes in reaching the decisions reflected in the orders that follow.
The parties married in October 1996 and separated in the early summer of 1998 shortly after their child was born on February 26, 1998. This is the wife's second marriage and the husbands first. The wife is 44 years of age and a high school graduate. She has no vocational skills. During her first marriage she worked as a waitress and manager in the family business.
The major issue in this dissolution is one of alimony and the plaintiffs health.
The wife obtained a divorce from her first husband in 1994 after a 17 year marriage and two minor children. No alimony was awarded to the wife in the agreed upon dissolution.
The plaintiff has had substantial health problems since the age of 11 years. She had brain and nerve damage to her face and cheeks requiring extensive plastic surgery. In 1984, a tumor was removed from the sinus canal, with complications. She has been plagued with severe migraine headaches for the past 15 years. She has been to a variety of doctors and specialists with respect to the migraine headaches without success. She testified she was diagnosed with bipolar and agoraphobia at age 18 years.
The wife claimed she fully disclosed her health problems to the defendant. The husband claims he was not aware of the extent of her physical difficulties. The parties met through a personal ad the plaintiff had placed in the paper. The plaintiff and her children, or at least one child, moved in with the defendant two months after they met.
Although the defendant earned a comfortable salary close to $60,000 per year, within a year after the marriage the parties had gone through the $12,000 in savings of the defendant and had accumulated $77,000 in credit card debt. The defendant filed bankruptcy. The plaintiff had previously filed bankruptcy in May 1994 prior to her marriage to the defendant. The defendant claims he complained over the plaintiffs spending habits and claims she purchased an inordinate amount of shoes and dresses.
The plaintiff applied for Social Security disability benefits prior to her marriage to the defendant. The defendant claims he CT Page 3765 was unaware of this application. The plaintiff presently receives Social Security disability in the amount of approximately $800 per month.
In spite of her physical difficulties, the plaintiff has raised two sons from a prior marriage; she is presently the prime care giver for the minor child, aged two years, issue of this marriage; and she has set up and maintained a home for her family. She has a new boyfriend and appears to be managing and moving her life along. The plaintiff was able to honeymoon in the Cayman Islands and to take a motorcycle trip to Canada.
The defendant is 43 years of age. He has a masters degree in chemistry. He presently earns approximately $65,000 gross per year from his major employment, according to his financial affidavit. He also works weekends and nights in retailing. This is his first marriage.
There was also an issue as to whether the defendant transmitted to the plaintiff the viral infection called HPV. This disease is transmitted through sexual contact and has an incubation period of 30 days to one year, according to the testimony of Lisa Housel, a specialist in infectious disease. Although the husband was ordered on February 24, 1999 to have an immediate medical exam, no exam was conducted. The plaintiff was diagnosed with HPV on August 30, 1998. From April 1996 to November 1997, the plaintiff had marital relations with the defendant. She did not develop HPV during this period. From November 1997 to August 21, 1998, it was unchallenged that the plaintiff was celibate. On August 21, 1998, the plaintiff had sexual intercourse with another male, not her husband. This evidence was unchallenged. Approximately nine dates later on August 30, 1998, the wife was diagnosed with HPV (genital warts) which, according to the testimony, could not have been transmitted to her by the other male.
The plaintiffs physician, Dr. Jankowich, testified as to the severity of the plaintiffs migraine headaches. The doctor indicated that, in spite of all the studies, no one has been able to determine the origin of the headaches.
The plaintiff claims the parties had daily sexual relations prior to the marriage. The plaintiff further claims that the defendant changed two months after the marriage and their marital relations diminished. CT Page 3766
The defendant claims he could not control the plaintiffs spending and, as a result of the arguing over money, the parties fell out of love. The parties went to marital counseling without success.
Unfortunately, the parties were unable to resolve their marital difficulties. The court declines to assess fault to either party for the breakdown of the marital relationship.
The following orders shall enter:
CUSTODY AND VISITATION
1. There shall be joint custody of the minor child, with physical residential custody to the plaintiff. The plaintiff shall have final decision on all matters relating to the health, education and welfare of the minor child.
2. The defendant shall be entitled to reasonable, flexible and liberal visitation to include but not be limited to the following:
A. Alternate Sundays from 10 a.m. to 5 p. m.
 B. Alternate Fridays from 6 p. m. overnight to Saturday at 11:30 a.m. provided the child and the defendant have bonded to permit an overnight visitation.
 C. Such other times as the parties shall agree in view of the age of the minor child.
CHILD SUPPORT
1. The defendant shall pay to the plaintiff as child support for the minor child the sum of $211 per week, in accordance with the child support guidelines.
2. Said support order shall be secured by an immediate wage withholding order.
MEDICAL INSURANCE COVERAGE
1. The defendant shall continue to provide medical coverage CT Page 3767 as is available at his place of employment for the benefit of the minor child.
2. The defendant shall be responsible for any unreimbursed medical expenses for the minor child incurred through a medical provider covered under his health insurance plan or any uncovered medical provider, if the wife, prior to treatment, first obtains his written consent for said treatment, which consent shall not be unreasonably withheld.
3. For any elective or orthodontic expenses, the wife shall obtain the husbands consent in writing, which consent shall not be unreasonably withheld.
REAL ESTATE
The wife shall convey and transfer to the husband any and all interest she has in the marital residence, located at 360 West Spring Street, #A-6, West Haven, Connecticut. The husband shall indemnify and hold the wife harmless with respect to any and all costs associated with this condominium. The parties indicate the residence has a negative value.
PERSONAL PROPERTY
1. The plaintiff shall be entitled to her bank accounts, motor vehicle and jewelry presently in her possession.
2. The defendant shall be entitled to his bank accounts, motor vehicles, furniture and books as listed on his financial affidavit.
3. Any remaining personal property shall be divided between the parties as they shall agree. Any disputes shall be referred to Family Relations and, if not resolved, the parties shall return to court for a hearing and orders thereon.
DEBTS
Each party shall be responsible for those debts set forth on their respective financial affidavits.
ALIMONY
The defendant shall pay to the plaintiff as periodic alimony CT Page 3768 the sum of $190 per week for a period of five years or the death or remarriage of the plaintiff, or her cohabitation as defined by statute or the death of the defendant, whichever event shall first occur.
Although the plaintiff presented a poor health condition, the plaintiff will have to consider developing vocational skills she can use while at home such as telephone solicitation, bookkeeping work or computer expertise or some other similar work if her migraine headaches continue to prevent her from working outside the home.
COBRA COVERAGE
The defendant shall provide medical coverage for the benefit of the plaintiff at his sole cost and expense as is available through his employment for the maximum duration allowed under COBRA or until the plaintiff shall remarry, whichever event shall first occur. The cost of COBRA coverage at this time is $181 per month.
PENSION/401(k)
The plaintiff shall receive one-half of any amount by which the defendants 401(k) plan increased during the period of this marriage and as of December 31, 1998. The defendant shall cooperate in providing documentation for this purpose. The transfer shall be by cash payment or QDRO at the discretion of the defendant. The remainder of the 401(K) shall be the sole property of the defendant and the plaintiff shall have no claim thereto.
LIFE INSURANCE
The defendant shall continue to maintain the $90,000 life insurance policy as is available through his employment, with the minor child named as beneficiary thereon, for so long as the defendant has an obligation for support for the minor child.
TAX EXEMPTIONS
The defendant shall be entitled to claim the minor child as a dependent for federal and state income tax purposes, provided he is current with the child support payments as of December 31. CT Page 3769
COUNSEL FEES
The plaintiff is awarded counsel fees in the amount of $1,000 to be paid by the defendant within six months of date.
CHANGE OF NAME
The plaintiff is granted a change of name to her maiden name of Funteral.
ARREARS
The parties agreed there is a pendente lite arrearage owed by the defendant to the plaintiff in the amount of $200. Said arrears shall be paid at the rate of $50 per month commencing April 1, 1999.
Coppeto, J.